Jeffrey G. Bradford, OSB No. 133080
  Direct:  503.802.5724
  Email:  jeff.bradford@tonkon.com
TONKON TORP LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201

Jason D. Popp, *Pro Hac Vice Pending*
  Direct:  404.881.4753
  Email:  Jason.popp@alston.com
Joanna Schorr, *Pro Hac Vice Pending*
  Direct:  212.210.9421
  Email:  Joanna.Schorr@alston.com
Mia Falzarano, *Pro Hac Vice Forthcoming*
  Direct:  214.922.3439
  Email: Mia.Falzarano@alston.com
ALSTON & BIRD
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309

*Attorneys for Defendants ApolloMD, Inc.,
ApolloMD Business Services, LLC, and Lane
Emergency Physicians LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KAREN STAPLETON, et al.<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PEACEHEALTH, et al.,<br><br>　　　　Defendants. | Civil No. 6:26-cv-00684-MTK<br><br>**DEFENDANTS APOLLOMD, INC., APOLLOMD BUSINESS SERVICES, LLC, AND LANE EMERGENCY PHYSICIANS LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

i

**TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF FACTS .................................................................................. 1

        A.      The Comprehensive and Competitive RFP Process ............................... 2

        B.      ApolloMD and ApolloMD Business Services, LLC ............................... 3

        C.      Lane Emergency Physicians, LLC Will Be Solely Responsible for
                Providing Clinical Services at the PeaceHealth Hospitals ...................... 4

        D.      Lane is Preparing to Provide Clinical Services at the PeaceHealth
                Hospitals ................................................................................................. 6

III.    PROCEDURAL HISTORY ............................................................................... 6

IV.     ARGUMENT AND AUTHORITIES ................................................................. 7

        A.      Legal Standard ....................................................................................... 7

        B.      Plaintiffs Seek Mandatory Injunctive Relief .......................................... 8

        C.      Under Any Test, Plaintiffs Cannot Carry Their Burden. ...................... 10

                1.      Plaintiffs Cannot Demonstrate the Required Likelihood of Success
                        on the Merits. .............................................................................. 10

                2.      Plaintiffs Cannot Demonstrate Any Likelihood of an Irreparable
                        Injury. .......................................................................................... 11

                3.      Plaintiffs Cannot Demonstrate that the Balance of Hardships
                        Strongly in Their Favor ................................................................ 15

                4.      The Public Interest Favors Denying the Preliminary Injunction .............. 16

V.      CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

CASES                                                                                           PAGE(S)

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ...............................................................................15

*Disney Enters. v. VidAngel, Inc.*,
   224 F. Supp. 3d 957 (C.D. Cal. 2016) ..................................................................15

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ...............................................................................12

*J. Conrad LTD v. United States*,
   457 F. Supp. 3d 1365 (Ct. Int'l Trade 2020) ..................................................16, 17

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ...............................................................................12

*Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Tr.*,
   636 F.3d 1150 (9th Cir. 2011) .............................................................................12

*Qualcomm Inc. v. Compal Elecs., Inc.*,
   283 F. Supp. 3d 905 (S.D. Cal. 2017)..................................................................17

*Stanley v. Univ. of S. Cal.*,
   13 F.3d 1313 (9th Cir. 1994) ........................................................................ *passim*

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .............................................................................20

*Su Jean Liu v. J & B Yang Corp.*,
   No. 17-CV-00966-H-BGS, 2017 WL 4856875 (S.D. Cal. July 24, 2017)..............................17

*Webster v. Aramark Corr. Servs.*,
   No. 3:14-CV-00652-AC, 2014 WL 7405656 (D. Or. Dec. 23, 2014) ....................................14

*Winter v. NRDC*,
   555 U.S. 7 (2008)............................................................................................11, 15

STATUTES

ORS 676.555............................................................................................6, 14, 17, 20, 21

OTHER AUTHORITIES

11A Wright & Miller, *Fed. Practice & Procedure* § 2949 (3d ed. 2014) .....................................16

Defendants ApolloMD, Inc., ApolloMD Business Services, LLC, and Lane Emergency Physicians, LLC (collectively the "Lane and ApolloMD Defendants"), oppose Plaintiffs' Motion for Preliminary Injunction and show the Court as follows:

## I. INTRODUCTION

The purpose of a preliminary injunction is to preserve the status quo. But that is not what Plaintiffs seek in their motion. Instead, Plaintiffs request that the Court dissolve a legally formed medical entity, permanently ban several companies from doing any business in Oregon, and stop a lawfully planned transition of emergency medical services that is designed to improve the quality of care in local hospitals. Plaintiffs' Complaint—which is based entirely on speculation about what may or may not happen in the future and which presents no justiciable controversy—comes nowhere close to satisfying the burden for the extraordinary remedy that injunctive relief requires.

## II. STATEMENT OF FACTS

PeaceHealth is a Washington nonprofit healthcare network that operates three hospitals in Lane County, Oregon. Compl. ¶ 4. In late 2025, PeaceHealth decided to engage in a process to determine whether it should transition its emergency department physician management services from its current partner, Plaintiff Eugene Emergency Physicians ("EEP"), to a new provider. *See* Dkt. 6, Ex. 2 (PeaceHealth Oregon Emergency Department RFP: Reasoning, Participants, Process and Criteria (hereinafter, "RFP Framework Sheet")). To that end, PeaceHealth initiated a structured request-for-proposal ("RFP") process to identify potential emergency department physician management service providers. *Id.* The process was designed so that any transition timeline would align with the conclusion of PeaceHealth's existing contract with EEP. *Id.*

1 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

A. **The Comprehensive and Competitive RFP Process.**

According to publicly available information, the RFP process was run as follows. "Six organizations were invited to participate in the RFP, following a broad and intentional market scan." *Id.* ApolloMD was one of the organizations invited to participate. Patel Dec. ¶ 9. Four organizations, including EEP, submitted proposals in response to the RFP. *See* RFP Framework Sheet. The RFP responses were evaluated by a diverse committee (the "RFP Committee") that included physician leadership, nursing, financing, and emergency department representatives from all three PeaceHealth Lane County hospitals. *See id.* The proposals were evaluated based on a set of 41 established criteria, including among other things, qualifications, experience, management platform sophistication, financial stability, transition planning, and cost. *Id.* Each candidate organization, including ApolloMD, participated in multiple rounds of interviews. *Id.;* Patel Dec. ¶ 10. As part of the process, ApolloMD submitted requested documents speaking to the quality of its affiliated practices, financial health, and affirmed its commitment to adhere to SB 951.[1] *Id.* The RFP Committee then evaluated each organization based on a scorecard of the 41 established criteria in nine review categories. RFP Framework Sheet.

"Following careful scoring and deliberation, the RFP committee recommended awarding the contract to ApolloMD as the proposal best aligned with PeaceHealth['s] . . . current and future needs. PeaceHealth system leadership approved this recommendation." *Id.* As a courtesy, in early February 2026 and prior to sending official notification letters to the RFP candidates, PeaceHealth advised EEP it had not been selected. Dkt. 6, Ex. 3 (PeaceHealth Oregon Emergency Department physician management transition Fact Sheet (hereinafter "Fact Sheet"). In or around early February 2026, PeaceHealth publicly announced that ApolloMD would support emergency

---

[1] S.B. 951 is codified at ORS 676.555 et seq.

2 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

physician services at its hospitals. Patel Dec. ¶ 11. PeaceHealth announced it intended to transition care on June 1, 2026 for two of the three hospitals, and July 1, 2026 for the third. Fact Sheet.

PeaceHealth selected ApolloMD as its new partner because, in its own words:

> ApolloMD brings depth of experience, operational infrastructure, and demonstrated outcomes that align with PeaceHealth's long-term goals for access and quality. ApolloMD has extensive experience operating **high-volume, high-acuity emergency departments**, including as a service provider to several departments with more than **80,000** annual visits and two with more than **150,000**. As patient complexity, ambulance traffic and community demand increase, PeaceHealth requires a partner with proven ability to stabilize operations in rapidly growing emergency settings. **ApolloMD's record of managing high-volume environments distinguishes the organization as one capable of meeting today's challenges and planning for the future.**

Fact Sheet (emphasis in original).

In short, ApolloMD was the candidate with the most experience and expertise and was the best partner for PeaceHealth going forward.

**B. ApolloMD and ApolloMD Business Services, LLC.**

ApolloMD, together with its affiliates, are physician-owned and led multispecialty clinical services providers. Patel Dec. ¶ 2. They offer emergency medicine, hospital medicine, anesthesia, radiology, revenue cycle management, and virtual health services in over 100 service lines to its hospital partners across 19 states, including to PeaceHealth in Ketchikan, Alaska. Patel Dec. ¶ 3. Since inception, ApolloMD was and remains a private, independent company with no current or historical outside ownership by private equity or venture capital. Patel Dec. ¶ 4. ApolloMD is owned by more than 300 of its physicians, advanced practice clinicians, and key current and former employees. Patel Dec. ¶ 5.

ApolloMD Business Services, LLC ("ABS"), is an affiliate owned by ApolloMD, Inc. and ApolloMD Holdings, LLC, another entity with no current or historical outside ownership by private equity or venture capital. ABS is likewise owned by entities controlled exclusively by

3 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ApolloMD founders and physicians, with no current or historical outside ownership by private equity or venture capital. Patel Dec. ¶¶ 6, 8. ABS is a management services organization ("MSO") that provides non-clinical administrative and operational support to physician practices. Id. ¶ 7.

**C. Lane Emergency Physicians, LLC Will Be Solely Responsible for Providing Clinical Services at the PeaceHealth Hospitals.**

Following its appointment through the RFP process, ApolloMD supported the establishment of a physician-owned practice entity, Lane Emergency Physicians, LLC ("Lane"). Chapman Dec. ¶¶ 2–4; Patel Ltr.; Patel Dec. ¶ 12. Lane was formed to provide emergency department physician services at the three PeaceHealth hospitals. Patel Ltr.; Chapman Dec. ¶ 5; Patel Dec. ¶ 13.

Lane is a limited liability company organized under the laws of Oregon. Chapman Dec. ¶ 6. Once Lane formally adopts its operating agreement, Lane's sole owner and member will be physician Dr. Johne Philip Chapman. *Id*. ¶ 7; Patel Ltr. Dr. Chapman is a board-certified emergency medicine physician with extensive clinical and leadership experience. Chapman Dec. ¶¶ 2–4; Dkt. 6, Ex. 4 (March 6, 2026 letter from Yogin Patel to Reps. Ben Bowman, Lisa Fragala and Nancy Nathanson (hereinafter, the "Patel Ltr.")). Dr. Chapman's Oregon medical license is active and effective as of March 17, 2026. Chapman Dec. ¶ 4. He did not take ownership of Lane until after his Oregon medical license was active. *Id.* ¶ 8.

As Lane's sole owner and member, Dr. Chapman will serve as the sole manager and corporate officer for Lane. *Id.* ¶ 9. As such, there will be direct physician control over all governance matters at all times. *Id.* Dr. Chapman is the only individual who may transfer ownership interests or appoint and remove managers and officers. *Id.* ¶ 10. For the avoidance of doubt, neither ApolloMD nor ABS have or will have any role in Lane's governance, ownership decisions, or officer appointments. *Id.* ¶ 11.

4 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ABS' sole role will be to serve as the MSO to Lane, providing non-clinical administrative and operational support pursuant to an administrative services agreement. *Id.* ¶ 12. Under that agreement, ABS will provide support in the form of the following administrative tasks: billing and collections based upon policies approved by Lane; assist in payor negotiations (with ultimate fee approval from Dr. Chapman); human resources  and legal support; assist in sourcing candidates with sole approval remaining with Lane and Dr. Chapman; data management and analytics; regulatory; and other administrative services typically required of an MSO. Chapman Dec. ¶ 13; ABS Dec. In exchange for providing administrative services, ABS will receive a fair market value management fee, to be negotiated. Chapman Dec. ¶ 14; ABS Dec.

Neither ABS nor ApolloMD (or any of their affiliates) will have any authority over Lane's practice of medicine, delivery of healthcare services, determination of how many patients a physician or clinician should see or hours they should work, which diagnostic tests are appropriate for patients, whether a patient needs a referral or consultation with other practitioners, or what patient care or treatment options are best suited for individual patients. Chapman Dec. ¶ 15; Patel Dec. ¶¶ 17–21. Neither ABS nor ApolloMD (or any of their affiliates) will determine the contractual relationships for third party payors, nor will they direct coding or billing procedures. Chapman Dec. ¶ 15; Patel Dec. ¶ 19. Likewise, they will not determine which medical equipment and supplies are needed, have authority over purchasing, selection, hiring, or firing physicians and clinicians related to clinical competency, or any activity that constitutes the practice of medicine. Chapman Dec. ¶ 15; Patel Ltr.

The only entity involved in the provision of clinical services to the PeaceHealth hospitals will be Lane. Chapman Dec. ¶ 16; Patel Dec. ¶ 17. All clinical judgment, patient care decisions, medical direction, and professional responsibilities will remain exclusively with Dr. Chapman and

5 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Lane's clinicians. Chapman Dec. ¶ 17. Lane (not ApolloMD, ABS or their affiliates) has and will continue to enter into physician services contract with PeaceHealth. *Id.* ¶ 18; Patel Dec. ¶ 19. And all revenue generated by the provision of clinical services at PeaceHealth hospitals will remain with Lane. Chapman Dec. ¶ 19. Dr. Chapman does not now, and will not in the future, receive compensation or other remuneration from ABS or ApolloMD. Chapman Dec. ¶ 20; Patel Dec. ¶ 21.

### D. Lane is Preparing to Provide Clinical Services at the PeaceHealth Hospitals.

Lane has not yet provided any medical services at any PeaceHealth facilities. Chapman Dec. ¶ 21. In advance of taking over operations at the PeaceHealth hospitals, Lane is actively working to make the transition from EEP to Lane seamless. *Id.* ¶ 22. As of April 20, 2026, Lane has entered into approximately 51 executed contracts with physicians and advanced practice clinicians, with 13 additional contracts awaiting signature. *Id.* ¶ 23. Lane has also engaged more than 40 physicians to provide locum tenems services. Lane's recruitment efforts remain ongoing in preparation for the transition of emergency department services at PeaceHealth. *Id.*

Lane will be well-staffed and well-positioned to begin providing medical services at PeaceHealth hospitals on June 1, 2026 and July 1, 2026, respectively. *Id.* ¶ 24. Specifically, the physician and advanced practice clinician schedule effective June 1, 2026 for the two PeaceHealth hospitals with June 1 transition dates is complete. I personally approved the schedule, and I am a physician with scheduled shifts on the June schedule. *Id.*

### III.    PROCEDURAL HISTORY

Plaintiffs commenced this action on March 20, 2026, by filing a complaint in the Circuit Court of the State of Oregon for Lane County. The Complaint seeks a declaratory judgment that the Defendants are in violation of Oregon law and a preliminary and permanent injunction

6 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

reinstating a lawfully terminated contract between EEP and PeaceHealth, prohibiting ApolloMD, ABS and Lane from conducting any business in Oregon, and dissolving Lane. Compl. ¶ 11. On April 6, 2026, Defendant PeaceHealth removed the action to this Court. Dkt. 1.

It was not until nearly three weeks later that Plaintiffs brought this motion for "emergency" injunctive relief and a motion for expedited discovery. Dkts. 5–16.

## IV.    ARGUMENT AND AUTHORITIES

### A. Legal Standard.

Injunctive relief "is an extraordinary remedy never awarded as of right," and demands a "clear showing that the plaintiff is entitled to relief." *Winter v. NRDC*, 555 U.S. 7, 22, 24 (2008).

In the Ninth Circuit, a party seeking injunctive relief must meet one of two tests. "Under the first, a court may issue a preliminary injunction if it finds that: (1) the moving will suffer irreparable injury if injunctive relief is not granted, (2) the moving party will probably prevail on the merits, (3) in balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction, and (4) granting the injunction is in the public interest." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (alterations omitted). Under the second, "a court may issue a preliminary injunction if the moving party demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* (emphasis in original). In evaluating the factors for the alternative test, "even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits" before a court can grant the injunction. *Id.*

A prohibitory preliminary injunction "preserves the status quo" while a "mandatory preliminary injunction goes well beyond simply maintaining the status quo *pendente lite* and is

7 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

particularly disfavored." *Stanley*, 13 F.3d at 1320. A request for injunctive relief is classified as mandatory if the "requested injunction require[s] [a party] to take affirmative action." *Garcia, 786 F.3d at 740*. When considering mandatory preliminary injunctions, "the district court should deny [] relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Stanley,* 13 F.3d at 1320) (internal quotations omitted).

When a mandatory preliminary injunction is requested, a plaintiff's "burden [] is doubly demanding," because a plaintiff seeking a mandatory injunction "must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original). "[M]andatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (alterations omitted); *see also Garcia*, 786 F.3d at 740 ("In plain terms, mandatory injunctions should not issue in doubtful cases."). When the relief requested would require an "order [that] a responsible party [] 'take action,'" that "relief is treated as a mandatory injunction." *Garcia*, 786 F.3d at 740 (quoting *Marlyn Nutraceuticals*, 571 F.3d at 879 (9th Cir. 2009)).

**B. Plaintiffs Seek Mandatory Injunctive Relief.**

Although Plaintiffs frame their motion as seeking only preliminary relief, it is clear that they seek a mandatory injunction. Plaintiffs ask this Court to issue an order: (1) mandating that PeaceHealth not enter into a contract with Lane and require that EEP provide emergency medical services to PeaceHealth; (2) prohibiting Lane and ApolloMD Defendants from "violating Oregon's prohibitions on the foreign and corporate practice of medicine"[2]; and (3) mandating that Lane

---

[2] If Plaintiffs sole request was an order from the Court that "[p]rohibit[ed] the [Lane and ApolloMD Defendants] from violating Oregon's prohibitions on the foreign and corporate practice of medicine and from conducting business

either be dissolved or barred from conducting business in Oregon. Plaintiffs' Motion for Preliminary Injunction ("Mot.") at 2. In each request, rather than preserving the status quo, Plaintiffs ask this Court to issue an injunction that requires the parties to take some (new) affirmative action, thus making the request one for mandatory injunctive relief.

Notably, Plaintiffs do not allege that PeaceHealth breached its contract with EEP by allowing it to expire. Nor do they allege any legal basis that would require PeaceHealth to enter into a new contract with them. Likewise, all parties agree that the contract between Plaintiffs and PeaceHealth will expire on June 1, 2026, at which point the contract between Lane and PeaceHealth will commence. If Plaintiffs were asking this Court to preserve the status quo until June 1, 2026, perhaps that could be fairly characterized as seeking only preliminary relief. But their pleadings make clear that they are requesting far broader relief and seeking to enjoin PeaceHealth from entering into a contract with Lane. This request for affirmative action falls squarely within the bounds for a request for mandatory injunctive relief.

The Ninth Circuit has long held that forcing two parties to enter into or renew a contract comprises mandatory injunctive relief. *See Stanley,* 13 F.3d at 1319–20. In *Stanley,* the plaintiff argued that because "she was not seeking to be instated by USC, [but] was seeking to continue her employment," she was not "seek[ing] a mandatory preliminary injunction." 13 F.3d at 1319. The Ninth Circuit disagreed. It held that, because "[plaintiff's] four-year contract [had already] terminated[,]. . . [s]he was informed . . . that her employment contract had expired[,] and that she should not perform any services for the university until both parties entered into a new contract," "an injunction compelling USC to install [plaintiff] as the head coach . . . was [] a [request for] mandatory injunction." *Id.* at 1320. Here, Plaintiffs are seeking to be installed as emergency

_____

illegally in Oregon," Lane and the ApolloMD Defendants would have no reason to oppose such a request as they have not violated Oregon law, nor do they intend to in the future.

9 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

service providers at a time when they no longer would be. Thus, the request that this Court refuse to allow PeaceHealth and Lane—two private entities—to enter into a contract and, instead, install Plaintiffs in Lane's place, is one for a mandatory preliminary injunction.

Plaintiffs' request that the Court either "dissolve [Lane] . . . or [] bar [Lane] from conducting business in Oregon," is likewise a request for a mandatory injunction. Mot. ¶ 3. There can be no argument that Plaintiffs are asking the Court to preserve the status quo with this request. Instead, they are asking that this Court order the dissolution of a corporation, requiring it to take affirmative steps to wind down corporate operations. *See, e.g.*, *Webster v. Aramark Corr. Servs.*, *No. 3:14-CV-00652-AC, 2014 WL 7405656, at \*5 (D. Or. Dec. 23, 2014).*

As a result, this Court should apply the heightened burden for a mandatory preliminary injunction in evaluating Plaintiffs' request.

**C.  Under Any Test, Plaintiffs Cannot Carry Their Burden.**

Regardless of whether the Court analyzes Plaintiffs' request under the test for a mandatory preliminary injunction or permissive preliminary injunction, Plaintiffs fall far short of meeting their burden.

*1.  Plaintiffs Cannot Demonstrate the Required Likelihood of Success on the Merits.*

We explain why Plaintiffs' Complaint fails in our Motion to Dismiss. *See* Mot. to Dismiss (Dkt. 29). Not only do Plaintiffs face insurmountable issues related to Article III standing, but they also fail to allege a claim upon which relief can be granted and any amendment would be futile because ORS §676.555 does not provide a private right of action for these Plaintiffs. (Dkt. 29). At minimum, Plaintiffs must show a "fair chance of success on the merits." *Stanley*, 13 F.3d at 1319. Because they cannot do this, no injunction should issue.

10 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### 2.    *Plaintiffs Cannot Demonstrate Any Likelihood of an Irreparable Injury.*

Just as Plaintiffs have failed to show any chance of success on the merits, Plaintiffs also failed to demonstrate that they will suffer any injury, let alone "irreparable injury" if injunctive relief is not granted. Mot. to Dismiss (Dkt. 29). Courts cannot presume irreparable harm. Instead, Plaintiffs must present a satisfactory showing, supported with actual evidence, and not merely conclusory statements or unsupported allegations. *See Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 675–76 (9th Cir. 1988)* ("Subjective apprehensions and unsupported predictions of revenue loss are not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm."); *see also Disney Enters. v. VidAngel, Inc., 224 F. Supp. 3d 957, 975 (C.D. Cal. 2016)* ("[A] party seeking injunctive relief must adduce evidence of likely irreparable harm and may not rely on unsupported and conclusory statements regarding harm the plaintiff might suffer." (internal quotation marks and citations omitted) (alterations accepted)).

Plaintiffs must "do more than merely allege imminent harm sufficient to establish standing; a plaintiff must **demonstrate** immediate threatened injury as a prerequisite to preliminary injunctive relief." *Baldrige*, 844 F.2d at 674 (emphasis in original). But the injury supposed in the Complaint is not specific to the Plaintiffs but rather to the community at large, and their conclusory declarations do not demonstrate the immediate injury required for an injunction to issue. Mot. at 19 ("Plaintiffs and the community will be irreparably harmed by the absence of adequate emergency care."); *Baldrige*, 844 F.2d at 674. Thus, the alleged injury that Plaintiffs contend they will suffer is not one that can form the basis the type of "extraordinary relief" that preliminary injunctions provide. *Winter*, 555 U.S. at 22, 24; *see also* Mot. to Dismiss (Dkt. 29).

Even if general injury were sufficient (it is not), Plaintiffs have failed to demonstrate that any speculative injury has any actual likelihood of occurring. The declarations provided by

11 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs rely almost exclusively on cookie-cutter, conclusory statements and unsupported beliefs about what the future may hold. *See e.g.,* Declarations of Sabah, Hunter, Beardsley, Rompala, Fantozzi, and Deedon ¶¶ 3–5 (making conclusory statements in substantially identical boilerplate language). These types of generalized and unsupported statements cannot form the basis for this Court to find a likelihood of irreparable injury. *J. Conrad LTD v. United States*, 457 F. Supp. 3d 1365, 1377 (Ct. Int'l Trade 2020) ("All affidavits should state the facts supporting the litigant's position clearly and specifically. Preliminary injunctions [are frequently] denied if the affidavits are too vague or conclusory to demonstrate a clear right to relief under Rule 65." (citing 11A Wright & Miller, *Fed. Practice & Procedure* § 2949 (3d ed. 2014)).

As a threshold matter, many of the declarations are substantially identical, providing no indication that the declarants know any details about the agreement between PeaceHealth and Lane and provide no background facts to support the statements they make about future risk to the quality of care. For example, Declarants Sabah, Hunter, Beardsley, Rompala, Fantozzi, and Deedon all state that they "understand" that PeaceHealth has awarded a contract to ApolloMD, *see, e.g.*, Sabah Dec. ¶ 3, but they do not provide any facts upon which this Court can determine how they came to this understanding. Likewise, these six declarants all state—without factual support—that "Lane County patients will be at significant risk and the quality and availability of emergency medical care, and even non-emergency medical care, will be significantly reduced," and that "the rapid transition of emergency care to new physicians will also result in extraordinary inefficiencies and reduced quality of care." *E.g., id.* ¶¶ 4–5.

While it is true that, in considering whether to grant a preliminary injunction, the Court has discretion to consider hearsay contained in declarations from interested parties, this relaxed evidentiary standard does not absolve declarants of the need to include facts to support their

12 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

statements. *Su Jean Liu v. J & B Yang Corp.*, No. 17-CV-00966-H-BGS, 2017 WL 4856875, at *5 (S.D. Cal. July 24, 2017) ("[C]onclusory and speculative statements of economic harm . . . without citation to **specific evidence** are insufficient to support a finding of irreparable injury." (emphasis added)); *Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905, 919–20 (S.D. Cal. 2017) (finding a party's declaration in support of a preliminary injunction too "general and speculative" to "constitute the factual basis needed to support an irreparable harm finding").

Plaintiffs also appear to premise their alleged injury on the idea that, because the declarants—who have no relation to Lane or ApolloMD—are unaware of the specific transition plans, these plans must not exist. *See, e.g.*, Deedon Decl. ¶ 8 ("There has been no plan or discussion regarding how this [the transition from EEP to Lane] will be accomplished . . . ."); Orton Decl. ¶ 4 ("[I]t is not clear and there has been no actual explanation of, a meaningful plan, let alone strategy for implementing that plan."). This is not the case and insufficient to support a preliminary injunction. Chapman Dec. ¶¶ 22–24; *J. Conrad LTD*, 457 F. Supp. 3d at 1378 (finding conclusory statements that harm would be suffered based on the "unexpected revisions of plaintiffs' business plans" "too vague to lend significant probative weight, offering no insight into what the revisions to the business plans are.")

On the contrary, Lane and PeaceHealth have worked diligently to ensure a smooth and effective transition. Chapman Dec. ¶¶ 22–24. This planning includes, but is not limited to, Lane contracting with over 50 physicians (and dozens more pending contract or pursuant to locum tenens engagements) to work at PeaceHealth's hospitals, along with continued recruitment efforts once the transition occurs. Chapman Dec. ¶ 23. As part of these plans, Lane and ABS have also worked to ensure complete statutory compliance. ABS will not be performing or exercising authority over any of the functions that are relegated to physicians under ORS §676.555. Instead,

13 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

its sole role will be to provide non-clinical administrative and operational. The declarants' lack of knowledge about these plans does not provide any basis for stopping them.

Along those lines, Plaintiffs' attempt to show irreparable harm based on hypothetical future occurrences is likewise insufficient. *See* Rompala Decl. ¶ 7 ("Many nurses and providers at PeaceHealth Riverbend have indicated they may leave their positions due to PeaceHealth executive's decision to terminate EEP and other factors."); Fantozzi Decl. ¶ 8 ("[T]his transition is schedule to take place during the summer months, a historically busy time for the hospital's emergency department . . . ."). The theme of the declarations is that because EEP has experience providing emergency services at PeaceHealth, they should continue to do so (against PeaceHealth's wishes). While it is true that EEP has provided emergency services for 35 years, it is wrong for EEP to insist that, because community members have a relationship with EEP, EEP can never be replaced. *See* Orton Decl. ¶ 6; Rompala Decl. ¶ 7; Fantozzi Decl. ¶ 7.

None of the hypothetical outcomes or the need to form new relationships can form the basis for Plaintiffs to carry their burden of demonstrating that some irreparable injury will occur without a preliminary injunction. Because both the declarants and Plaintiffs lack any type of direct relationship with Lane or ApolloMD, there is nothing to suggest that any testimony given at the hearing could address these issues. The declarants have no personal knowledge of the innerworkings of Lane and PeaceHealth relationship and, as a result, cannot testify as to the potential outcomes of the future relationship.

Given Plaintiffs' inability to demonstrate the probability of an irreparable injury, it is likely they will rely on the Ninth Circuit's alternate test, requiring the balancing of the hardships tipping strongly in Plaintiffs' favor. *Stanley,* 13 F.3d at 1319. But this, too, will be unsuccessful as an

14 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

evaluation of the hardships shows that the scales tip not in Plaintiffs' favor, but in the favor of ApolloMD and Lane.

### 3. Plaintiffs Cannot Demonstrate that the Balance of Hardships Strongly in Their Favor.

Plaintiffs cannot demonstrate that balance of hardships tips in their favor. To the contrary, it tips decidedly in favor of the Lane and Apollo Defendants.

The Lane and Apollo Defendants have invested significant resources preparing for the transition of emergency physician services at PeaceHealth's hospitals, including through contracts with physicians and advanced practice clinicians who have made the commitment to provide clinical services at PeaceHealth hospitals. Since early February, ApolloMD has made substantial investments in operational preparedness in reliance on the planned transition timeline. RFP Framework Sheet at 2. An injunction would render these investments worthless, introduce uncertainty for recruited physicians, and cause irreversible harm to the those clinicians who have committed to provide services at PeaceHealth through their contracts with Lane.

By contrast, Plaintiffs' purported harm is speculative and self-inflicted. *See* Mot. to Dismiss (Dkt. 29). EEP's physicians are not being prevented from practicing medicine in Oregon. They are simply facing the expiration of a contract with PeaceHealth, which is a business reality EEP has known about for months. *See* Anderson Dec. ¶ 16. Any harm from the loss of the PeaceHealth contract is the ordinary consequence of a competitive bidding process—not irreparable injury warranting extraordinary equitable relief. Plaintiffs mischaracterize the requested relief when they argue that "Defendants cannot be harmed by being required simply to follow the law." Mot. at 20. In fact, Plaintiffs seek to mandate that PeaceHealth continue a contractual relationship set to expire by its own terms and that Lane be dissolved or barred from conducting business in Oregon. This extraordinary relief requested would deprive Lane and the

15 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ApolloMD Defendants of the benefit of their lawful business activities and the legitimate contract awarded through PeaceHealth's comprehensive and competitive RFP process, which included ApolloMD submitting requested documents that spoke to the quality of its affiliated practices, and affirmed its commitment to adhere to SB 951, codified at ORS 676.555. Mot. at 2; RFP Framework Sheet at 1; Patel Dec. ¶ 10.

Even if Plaintiffs were able to demonstrate that they would experience harm without the requested injunction (they cannot), any harm they rely on cannot outweigh the fact that they have no viable cause of action and, thus, no chance of success on the merits. *Stanley*, 13 F.3d at 1319.

### 4. The Public Interest Favors Denying the Preliminary Injunction.

The public interest weighs heavily against the extraordinary relief Plaintiffs seek. As a threshold matter, "courts should weigh the public interest in light of the likely consequences of the injunction . . . [and the] consequences must not be too remote, insubstantial, or speculative and must be supported by evidence." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Here, the public has a paramount interest in access to high-quality emergency medical services. This is exactly what PeaceHealth and Lane will provide. Indeed, PeaceHealth, the entity responsible for delivering emergency care to Lane County residents, conducted a comprehensive and competitive RFP process to ensure the community receives the best possible care. Chapman Dec. ¶¶ 5, 22–24; Patel Dec. ¶¶ 9–11. PeaceHealth, Lane and the ApolloMD Defendants have been and continue to work together to ensure a smooth transition would occur. Chapman Dec. ¶¶ 22–24. Indeed, for the two hospitals with June 1 transition dates, the physician and advanced practice clinician schedule (which incudes working shifts for Dr. Chapman) has been set and approved by Dr. Chapman. *Id.* ¶ 24. If the Court were to suddenly halt this planned transition, emergency services would likely be disrupted. The public interest is served by honoring the outcome of this

16 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

thorough process and deferring to the judgment of the healthcare provider best positioned to evaluate the community's needs.

## V.    CONCLUSION

Lane is dedicated to improving emergency healthcare services at PeaceHealth and will do so in  compliance with ORS 676.555. The Plaintiffs cannot show any likelihood in succeeding on the merits of their action, have not provided any basis grounded in fact to demonstrate irreparable injury, and the balance of equities tilts against them when considering whether an injunction should issue. For these reasons, Plaintiffs' request for a preliminary injunction should be denied.

Dated: April 20, 2026

**TONKON TORP LLP**

*/s/ Jeffrey G. Bradford*
Jeffrey G. Bradford, OSB No. 133080
jeff.bradford@tonkon.com
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201

**ALSTON & BIRD**

Jason D. Popp, *Pro Hac Vice Pending*
jason.popp@alston.com
Joanna Schorr, *Pro Hac Vice Pending*
Joanna.Schorr@alston.com
Mia Falzarano, *Pro Hac Vice Forthcoming*
Mia.Falzarano@alston.com
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309

*Attorneys for Defendants ApolloMD, Inc.,
ApolloMD Business Services, LLC, and Lane
Emergency Physicians LLC*

17 – OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION