MISHA ISAAK, Bar No. 086430
misha.isaak@stoel.com
KEVIN R. SCHOCK, Bar No. 181889
kevin.schock@stoel.com
RYAN H. TAMM, Bar No. 222774
ryan.tamm@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KAREN STAPLETON, as guardian *ad litem* for JANE STAPLETON; DAN McGEE, MD, PhD, an individual and licensed medical practitioner; and EUGENE EMERGENCY PHYSICIANS, P.C., an Oregon professional corporation, | Case No.: 6:26-cv-00684-MTK<br><br>**DEFENDANT PEACEHEALTH'S MOTION TO DISMISS** |
| Plaintiffs, | ORAL ARGUMENT REQUESTED |
| v. | |
| PEACEHEALTH, a Washington nonprofit corporation; APOLLOMD, INC., a Georgia corporation; APOLLOMD BUSINESS SERVICES, LLC; LANE EMERGENCY PHYSICIANS LLC, an Oregon limited liability corporation; and DOES 1-5, | |
| Defendants. | |

DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

LOCAL RULE 7-1 CERTIFICATION ................................................................................ 1

MOTION............................................................................................................................. 1

MEMORANDUM OF LAW ............................................................................................... 1

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND................................................................................... 2

III.    LEGISLATIVE BACKGROUND............................................................................ 5

IV.     SUMMARY OF THE ARGUMENT ....................................................................... 9

V.      ARGUMENT........................................................................................................... 11

        A.      Plaintiffs' claims are subject to dismissal under Fed. R. Civ. P. 12(b)(1)
                for lack of standing and ripeness. ............................................................... 11

                1.      EEP has failed to allege facts showing a "concrete injury"
                        sufficient to support standing...................................................... 13

                2.      Dr. McGee lacks standing............................................................. 17

                3.      Ms. Stapleton and J.S. lack standing............................................ 18

                4.      Plaintiffs' alleged injury is not redressable by the relief they seek. ........ 19

                5.      Plaintiffs lack prudential standing. ............................................. 20

                6.      Plaintiffs' claims are not ripe....................................................... 21

                7.      Remand would be futile. ............................................................... 22

        B.      Plaintiffs' claims must be dismissed under Fed. R. Civ. P. 12(b)(6) for
                failure to state a plausible claim for relief. ............................................... 23

                1.      Plaintiffs have no private right of action under the Corporate
                        Practice of Medicine statute......................................................... 24

                2.      Plaintiffs fail to plausibly allege a violation of the Corporate
                        Practice of Medicine statute......................................................... 28

VI.     CONCLUSION........................................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alto v. State Fire Marshal*,
319 Or 382 (1994)..................................................................................................27

*Am. Elec. Co. v. United States*,
270 F. Supp. 689 (D. Haw. 1967).........................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................23, 24

*Augustine v. U.S.*,
704 F.2d 1074 (1983)............................................................................................12

*Austin v. Univ. of Or.*,
925 F.3d 1133 (9th Cir. 2019).............................................................................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................23

*Bellikka v. Green*,
306 Or. 630 (1988)................................................................................................28

*Brooks v. Dierker*,
275 Or 619 (1976).................................................................................................27

*Brown v. Or. State Bar*,
293 Or. 446 (1982)................................................................................................27

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)................................................................................................18

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..............................................................................................15

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) .............................................................................31

*Deckard v. Bunch*,
258 Or. 754 (2016)................................................................................................25

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...............................................................................31

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Elizabeth Retail Props. LLC v. KeyBank Nat. Ass'n*,
　83 F. Supp. 3d 972 (D. Or. 2015) ...............................................................16

*Erwin v. Or. State Bar*,
　149 Or. App. 99 (1997).............................................................................27

*Hale v. State*,
　259 Or. App. 379 (2013)...........................................................................27

*Henry v. Gerber Prod. Co.*,
　No. 3:15-cv-02201-HZ, 2016 WL 1589900 (D. Or. Apr. 18, 2016) ........................26

*Ken Leahy Const., Inc. v. Cascade Gen., Inc.*,
　329 Or. 566 (1999).................................................................................28

*League of Or. Cities v. State of Oregon*,
　334 Or. 645 (2002)..............................................................................23, 27

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)....................................................................11, 12, 13, 17

*M.S. v. Brown*,
　902 F.3d 1076 (9th Cir. 2018) .....................................................................19

*Morgan v. Sisters School District No. 6*,
　353 Or. 189 (2013).............................................................................22, 23

*Nat'l Labor Relations Bd. v. Oregon*,
　No. 6:20-cv-00203-MK, 2020 WL 5994997 (D. Or. Oct. 9, 2020)........................12

*Newberg Crestview, LLC v. City of Newberg*,
　No. 3:22-CV-1289-AR, 2024 WL 4581543 (D. Or. Oct. 25, 2024)......................25

*In re Nike, Inc. Sec. Litig.*,
　181 F. Supp. 2d 1160 (D. Or. 2002) ............................................................5, 15

*People Organized for Welfare & Emp't Rights (P.O.W.E.R.) v. Thompson*,
　727 F.2d 167 (7th Cir. 1984) ......................................................................21

*Pistor v. Garcia*,
　791 F.3d 1104 (9th Cir. 2015) .....................................................................12

*R.J. Taggart, Inc. v. Douglas County*,
　31 Or. App. 1137 (1977) (Johnson, J., dissenting) ................................................13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Republic of Marshall Islands v. United States*,
  865 F.3d 1187 (9th Cir. 2017) .........................................................................................19

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .........................................................................................12

*Safer Chems., Healthy Fams. v. U.S. Env't Prot. Agency*,
  943 F.3d 397 (9th Cir. 2019) ...........................................................................................21

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*,
  343 F.3d 1036 (9th Cir. 2003) .........................................................................................13

*Serles v. Beneficial Or., Inc.*,
  91 Or. App. 697 (1988)....................................................................................................25

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).........................................................................................................12

*Texas v. United States*,
  523 U.S. 296 (1998).........................................................................................................21

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).........................................................................................................17

*TVKO v. Howland*,
  335 Or. 527 (2003)...........................................................................................................23

*Valley Forge Christian College v. Ams. for Separation of Church and State, Inc.*,
  454 U.S.464 (1982)..........................................................................................................12

*Waremart, Inc. v. Mathias*,
  168 Or. App. 272 (2000)..................................................................................................27

*Warth v. Seldin*,
  422 U.S. 490 (1975).....................................................................................................12, 20

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .........................................................................................12

*Young v. United States*,
  769 F.3d 1047 (9th Cir. 2014) ...........................................................................................2

**Statutes**

Oregon Declaratory Judgment Act, ORS 28.010 *et seq.* .......................................................26

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

ORS 28.010................................................................................................................27

ORS 28.020................................................................................................................22

ORS 646.607..............................................................................................................26

ORS 676.555........................................................................................................ passim

ORS 676.555(2)(a)......................................................................................................24

ORS 676.555(2)(a)(A)...........................................................................................6, 29

ORS 676.555(2)(a)(B)..................................................................................................6

ORS 676.555(2)(a)(C)..................................................................................................6

ORS 676.555(2)(a)(D)..................................................................................................6

ORS 676.555(2)(a)(E)...................................................................................................6

ORS 676.555(2)(a)(F)...................................................................................................6

ORS 676.555(2)(a)(G)...........................................................................................3, 4, 29

ORS 676.555(2)(a)(G)(i) .......................................................................................7, 30, 31

ORS 676.555(2)(a)(G)(ii) .........................................................................................7, 30

ORS 676.555(2)(a)(G)(iii) ........................................................................................7, 30

ORS 676.555(2)(a)(G)(iv) ........................................................................................7, 30

ORS 676.555(2)(a)(G)(v) ....................................................................................7, 30, 31

ORS 676.555(2)(a)(G)(vi) ...................................................................................7, 30, 31

ORS 676.555(2)(a)(G)(vii) ......................................................................................7, 30

ORS 676.555(2)(a)(G)(viii) ................................................................................7, 30, 31

ORS 676.555(5)(b) .............................................................................................21, 24, 25

**Rules**

Fed. R. Civ. P. 8(a)(2)................................................................................................26

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Civ. P. 12(b)(1)...........................................................................................1, 11, 12, 17

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 16, 23

Fed. R. Evid. 201(b)(2) ................................................................................................4, 15, 16

**Constitutional Provisions**

U.S. Const. art. III.............................................................................................. passim

U.S. Const. art. III, § 2, cl. 1 ......................................................................................11

**Legislative Materials**

Floor Letter, Sen. Deb Patterson, SB 951, Apr. 8, 2025....................................................9

Or. Legis. Assemb., H. Comm. on Behav. Health & Health Care, Staff Measure
    Summary, S.B. 951-A, 83d Leg. Assemb., Reg. Sess. (Or. 2025) ...........................................3

S.B. 951 (2025) (recitals).......................................................................................6

S.B. 951 (Introduced)..............................................................................................26

Staff Measure Summary, S.B. 951-A, at 1 ................................................................25

Testimony, House Committee on Behavioral Health and Health Care, Apr. 29,
    2025........................................................................................................8

Video Recording, Senate Committee on Health Care, Mar. 25, 2025, at 8:12
    (comments of Daniel Dietz)..................................................................26

Video recording, Senate Committee on Health CAre, SB 951, Mar 4, 2025, at
    1:15:45 (statement of Tony Germann)..........................................................8

Video recording, Senate Committee on Health Care, SB 951, Mar. 4, 2025, at
    11:45 (statement of Rep. Cyrus Javadi) ...................................................7

**Other Authorities**

Oregon Medical Board License Verification Website
    https://omb.oregon.gov/Clients/ORMB/Public/VerificationDetails.aspx?Entity
    ID=1598774 ..................................................................................4

Tanya Albert Henry, "Behind Oregon's First-in-Nation Law Curbing Corporate
    Medicine," AMA-assn.org (Feb 9, 2026) ..................................................9

## LOCAL RULE 7-1 CERTIFICATION

Counsel for Defendant PeaceHealth made a good-faith effort to resolve this dispute with Plaintiffs' counsel via videoconference before filing this motion. The parties were unable to reach an agreement, and Plaintiffs' counsel indicated that Plaintiffs oppose this Motion.

## MOTION

Defendant PeaceHealth hereby moves to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim. This Motion is supported by the following Memorandum of law. PeaceHealth requests oral argument on this Motion.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Oregon's Corporate Practice of Medicine ("CPM") law is intended to protect patients from improper interference in clinical decision-making. It is *not* designed to insulate private, for-profit medical companies from competition, or to guarantee such companies a right to exclusive hospital contracts. Yet that is precisely how Plaintiffs attempt to deploy the statute here.

After PeaceHealth elected not to renew its contract with Plaintiff Eugene Emergency Physicians, P.C. ("EEP")—a for-profit corporation that provides medical services to hospital emergency rooms—EEP filed this lawsuit, seeking to force PeaceHealth to extend EEP's contract indefinitely. Plaintiffs claim that allowing PeaceHealth to select a new emergency medical care provider would somehow violate Oregon's CPM statute. EEP now seeks a mandatory injunction forcing PeaceHealth to enter a new contract with EEP after its existing contract expires. EEP's lawsuit must fail as a matter of law.

Page 1 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

Plaintiffs have not alleged—and cannot show—any actual violation of Oregon's CPM law. The Complaint does not identify a single instance in which any Defendant interfered with, controlled, or even attempted to influence clinical decision-making. Instead, Plaintiffs seek to wield the CPM statute as an anticompetitive weapon to prevent PeaceHealth from contracting with one of EEP's competitors. This effort fails as a matter of law. The CPM statute does not create a private right to suppress competition, block legitimate hospital contracting decisions, or guarantee income to private companies like EEP. Therefore, and for the reasons stated below, the Court should dismiss Plaintiff's Complaint.

## II.    FACTUAL BACKGROUND

The following facts are drawn from the factual allegations in Plaintiffs' Complaint. These facts are presumed to be true for purposes of this motion only. *See Young v. United States, 769 F.3d 1047, 1053 (9th Cir. 2014)* (when reviewing a motion to dismiss, the court accepts factual allegations as true and evaluates whether those allegations are sufficient to state a claim that survives a motion to dismiss). Defendants have not yet answered the Complaint and reserve the right to deny any factual allegations asserted in the Complaint if an answer becomes necessary following the determination of this Motion.

Defendant PeaceHealth is a not-for-profit healthcare system serving patients in Lane County as well as southern and coastal Oregon. (Complaint ("Compl."), ¶ 4). Plaintiff EEP is a for-profit professional corporation that provides emergency medical services for several hospitals in Lane County. (Compl., ¶ 10). PeaceHealth contracts with EEP to provide emergency medical services at three PeaceHealth facilities. (Compl., ¶ 10).[1]

---

[1] EEP staffs the emergency departments at the RiverBend and Cottage Grove hospitals. It also provides backup staffing at PeaceHarbor, where PeaceHealth directly employs the regular ED physicians.

EEP's contracts with PeaceHealth, by their terms, are set to expire this spring. (Compl., ¶ 11). In early 2026, following a competitive bidding process, PeaceHealth decided not to enter into a new contract with EEP. (Compl., ¶ 11). In early February, PeaceHealth notified EEP that it would allow the contract to expire, and that PeaceHealth planned to enter into a new agreement with an EEP competitor. (Compl., ¶ 11). In response, EEP filed this lawsuit, seeking to block PeaceHealth from contracting with any replacement provider. (Compl., ¶ 36(a)). EEP now asks the Court to declare any "purported agreements" between PeaceHealth and the winner of the competitive bid process "void" (Compl., ¶ 33) and to issue a mandatory injunction compelling PeaceHealth to either award a new contract to EEP or extend EEP's existing contract indefinitely (Compl., ¶ 36).

EEP's claims are purportedly based in the CPM statute, ORS 676.555, (Compl, ¶ 33), which is also sometimes referred to as "S.B. 951." That statute is a patient-protection measure enacted in 2025 to address the concern that "allowing non-physicians to make decisions about health care delivery could increase care costs, result in lower quality care for patients, and create ethical dilemmas for physicians." Or. Legis. Assemb., H. Comm. on Behav. Health & Health Care, Staff Measure Summary, S.B. 951-A, 83d Leg. Assemb., Reg. Sess. (Or. 2025) (prepared by Alexandra Kihn-Stang), at p. 2.

Specifically, the CPM statute prohibits management service organizations ("MSOs")— companies that provide management services to medical practices—from exercising "de facto control," that is, "ultimate decision-making authority," over a physician-owned medical practice in a way that affects clinical decision-making. ORS 676.555(2)(a)(G). The statute provides a list of clinical functions over which ultimate decision-making authority is reserved for the physician-

owned practice, including setting clinical staffing levels; making diagnostic coding decisions; and setting clinical standards or policies. *Id*.

Notably, EEP does not allege that Defendants are currently exercising "de facto control" or "ultimate decision-making authority" over clinical decision-making or any clinical function. Instead, EEP argues that the CPM statute is implicated because PeaceHealth's future emergency medical services provider might adopt a "business model" that allegedly violates the statute. (Compl., ¶¶ 23, 25).

Specifically, EEP speculates that Defendant Lane Emergency Physicians LLC ("Lane")—the emergency medical services provider that PeaceHealth selected to replace EEP after its contract expires—might permit either ApolloMD, Inc. or ApolloMD Business Services, LLC (collectively, "Apollo Defendants"), which provide MSO services, to influence clinical decision-making by advertising Lane's services under another entity's name, (Compl., ¶¶ 26-27), negotiating contracts with third-party payors on Lane's behalf, (Compl., ¶ 28), or setting billing and collection policies, (Compl., ¶ 29). Plaintiffs further allege that the Apollo Defendants—the alleged MSOs—might exercise "de facto control" over Lane's clinical operations—but the Complaint offers no detail explaining how such control would occur or what clinical decisions would allegedly be affected. (Compl., ¶ 30).

These speculative allegations concerning Lane's hypothetical future conduct form the entire basis of EEP's claims in this case.[2]

---

[2] EEP also alleges that Lane is an "illegal entity" (Compl., ¶ 13) because its owner-manager, Dr. Johne Philip Chapman, is allegedly not "a licensed physician in the state of Oregon." (Compl., ¶ 24). This allegation, however, is demonstrably untrue. Dr. Chapman is an Oregon-licensed physician holding medical license number MD229326. *See* https://omb.oregon.gov/Clients/ORMB/Public/VerificationDetails.aspx?EntityID=1598774. The Court can take judicial notice of this fact pursuant to Fed. R. Evid. 201(b)(2) (courts can take judicial notice of facts that "can be accurately and readily determined from sources whose

Page 4 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

In addition to EEP, the Complaint names two individual plaintiffs, Dan McGee and Karen Stapleton. According to the Complaint, Dr. McGee is a physician residing in Lane County who asserts a "legally protectible interest in exercising medical judgment." (Compl., ¶ 2). The Complaint does not allege that Dr. McGee's rights are affected in any way by PeaceHealth's decision to retain a different emergency medical services provider. Nevertheless, Dr. McGee seeks the same relief as EEP—a declaration under the CPM statute and an injunction compelling PeaceHealth to continue contracting with EEP. (Compl., ¶¶ 33, 36).

Ms. Stapleton appears as guardian *ad litem* for her minor child, J.S., who, according to the Complaint, previously received emergency care at a PeaceHealth facility and may require such care again in the future. (Compl., ¶ 1). As with Dr. McGee, the Complaint alleges no facts explaining how PeaceHealth's contracting decisions will result in any concrete or particularized injury to Ms. Stapleton or her child. Yet Ms. Stapleton likewise seeks the same extraordinary relief as EEP and Dr. McGee: an order requiring PeaceHealth to extend or renew EEP's emergency-services contract.

### III.    LEGISLATIVE BACKGROUND

In the 2025 legislative session, the Oregon Legislative Assembly debated, amended, and ultimately enacted Senate Bill ("S.B.") 951, which, as previously mentioned, is known as the Corporate Practice of Medicine or "CPM" law. The bill arose from concerns that profit-motivated businesses would interfere with physicians' patient-care decisions, which has long been unlawful in Oregon. The bill's recitals specifically identify the concern that businesses might "usurp[] the medical judgment of physicians … in favor of cost-cutting and profitmaking

---

accuracy cannot reasonably be questioned"); *see also In re Nike, Inc. Sec. Litig.*, 181 F. Supp. 2d 1160, 1165 (D. Or. 2002) ("The court may judicially notice facts from publicly available documents.").

… at the expense of and in opposition to the best interests of patients." S.B. 951 (2025) (recitals). In response to these concerns, and in order "to protect the best interests of patients in this state, and enable medical practitioners to exercise medical judgment free from interference from those who are not licensed to practice medicine in this state," the legislature adopted a series of specific restrictions that, in sum, "prohibit business entities from practicing medicine or employing actively practicing physicians[.]" *Id.*

Having identified a policy problem, the legislature enacted a narrowly tailored solution to address that problem. As the legislative history makes absolutely clear, the legislature did not ban MSOs, prohibit physicians from partnering with MSOs or for-profit businesses, or even proscribe the "Friendly Physician" model that Plaintiffs decry. Rather, it identified specific kinds of corporate control of medical decision-making and narrowly barred those activities.

The prohibited activities listed in the law fall generally into two categories: (1) forms of ownership, and (2) "de facto control." With respect to **ownership**, the law lists various arrangements that are not allowed. Management services organizations may not:

- Own or control a majority of shares in a professional medical entity with which the MSO has a contract for management services, ORS 676.555(2)(a)(A);

- Exercise a proxy of a professional medical entity with which the MSO has a contract for management services, *id.* at § (2)(a)(B);

- Control or restrict the sale or transfer of a professional medical entity's shares, interest or assets, *id.* at § (2)(a)(C);

- Issue shares of stock in the professional medical entity, *id.* at § (2)(a)(D);

- Pay dividends from shares or an ownership interest in a professional medical entity, *id.* at § (2)(a)(E);

- Acquire or finance the acquisition of the majority of the shares of a professional medical entity, *id.* at § (2)(a)(F).

Page 6 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

With respect to "**de facto control**," management services organizations may not:

- Exercise ultimate decision-making authority over hiring or terminating, setting work schedules or compensation for, or otherwise specifying terms of employment of medical licensees, *id.* at § (2)(a)(G)(i);

- Exercise ultimate decision-making authority over setting clinical staffing levels or specifying the period of time a medical licensee may see a patient, *id.* at § (2)(a)(G)(ii);

- Exercise ultimate decision-making authority over making diagnostic coding decisions, *id.* at § (2)(a)(G)(iii);

- Exercise ultimate decision-making authority over setting clinical standards or policies, Exercise ultimate decision-making authority over, *id.* at § (2)(a)(G)(iv);

- Exercise ultimate decision-making authority over setting policies for patient, client or customer billing and collection, *id.* at § (2)(a)(G)(v);

- Exercise ultimate decision-making authority over advertising a professional medical entity's services under the name of an entity that is not a professional medical entity, *id.* at § (2)(a)(G)(vi);

- Exercise ultimate decision-making authority over setting the prices, rates or amounts the professional medical entity charges for a medical licensee's services, *id.* at § (2)(a)(G)(vii);

- Exercise ultimate decision-making authority over negotiating, executing, performing, enforcing or terminating contracts with third-party payors or persons that are not employees of the professional medical entity, *id.* at § (2)(a)(G)(viii).

The legislative history leaves no doubt that partnership, cooperation, and other kinds of involvement by MSOs in medical care are permissible, unless prohibited by the statute. As long as the MSO does not **own** a physician group or exercise **de facto control** over patient care, the CPM statute has nothing to say about its activities.

During legislative hearings, one proponent of the bill explained: "This bill is not about banning corporate involvement, it is about ensuring that medical decisions continue to be made and are made by medical professionals, not by executives focused on the bottom line." Video recording, Senate Committee on Health Care, SB 951, Mar. 4, 2025, at 11:45 (statement of Rep.

Cyrus Javadi). Another proponent of the bill agreed: "This bill does not ban MSOs. There are MSOs who support this bill, this bill does not ban private equity, private equity was part of the process in refining it …. MSOs and investors still have a great deal of ability to invest and be in innovative in practice …. It also clearly permits physicians to delegate work to an MSO, but it allows a provider to have a say and a veto in the decision-making when that management is not ideal for patient outcomes." _Id._ at 1:15:45 (statement of Tony Germann). Responding to opponents of the bill who said it would sideline management services organizations, he added: "I believe raising the threat that a MSO cannot be part of the work is disingenuous." _Id._ Yet another supporter, David Norris, Treasurer of the Association for Independent Medicine, submitted written testimony into the legislative record, which said: "Let me be clear: SB 951 is not anti-business. It does not prevent the use of management service organizations or restrict investment in medical practices. Rather, it draws a necessary and reasonable line—preserving the autonomy of licensed professionals in clinical decisions while allowing businesses to support, not control, the practice of medicine." Testimony, House Committee on Behavioral Health and Health Care, Apr. 29, 2025.

A "Frequently Asked Questions" document provided to members of the State Senate as they were voting to enact S.B. 951 by the bill's chief sponsor, Senator Deb Patterson, explains:

**Does this bill ban MSOs?**

**No.** MSOs can play an important role in helping clinics run smoothly. This bill does not seek to change that.

SB 951 simply ensures that **MSOs provide administrative services—not clinical control**. Physicians will still be able to partner with MSOs, but their right to **retain final authority over medical decisions is protected by this bill**.

**Does this bill ban private equity or corporate investment?**

Page 8 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

**No.** Under SB 951, private equity firms and corporations can still invest in medical clinics—up to 49% ownership—but they cannot hold a controlling stake. This maintains the standard under current Oregon law.

**Corporations and private equity firms can partner with physicians, provide capital, and offer management services**—but doctors must have the final say over medical decisions and can veto investor recommendations.

Floor Letter, Sen. Deb Patterson, SB 951, Apr. 8, 2025 (emphasis in original).

In an article touting the bill after its passage, one of its lead sponsors, House Majority Leader Ben Bowman, explained S.B. 951 this way: "It doesn't mean you can't partner with private equity firms or corporations, but it means at the end of the day when decisions are being made that impact patients, they have to be made by the physicians." Tanya Albert Henry, "Behind Oregon's First-in-Nation Law Curbing Corporate Medicine," AMA-assn.org (Feb 9, 2026). These are not mere stray or passing statements. The legislative record is replete with many, many assurances that for-profit MSOs will be allowed to operate, partner with physicians groups, and be involved in medical care as long as they do not own physicians groups or exercise de facto control of patient care decisions.

## IV.    SUMMARY OF THE ARGUMENT

Plaintiffs' claims against PeaceHealth are subject to dismissal for at least two independent, inescapable reasons.

*First*, Plaintiffs lack standing. To establish standing, a plaintiff must show that it has suffered—or will imminently suffer—a specific, concrete injury that is traceable to defendant's conduct and redressable by a favorable court decision. None of the Plaintiffs in this case have made the required showing. The only "harm" EEP claims to have suffered is the loss of its contract with PeaceHealth. But EEP does not have any contractual right or legally protected

Page 9 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

expectation of a renewed contract with PeaceHealth. The expiration or nonrenewal of an at-will contract is not a legally cognizable injury sufficient to support standing.

The individual Plaintiffs, Dr. McGee and Ms. Stapleton, likewise fail to establish standing. Neither alleges that they have suffered any concrete, personal injury traceable to Defendants' conduct. Instead, they assert generalized concerns about hypothetical future events that may never occur. Such speculative and conjectural allegations are insufficient to establish standing.

Further, even if Plaintiffs could transform an ordinary contractual event—the expiration of EEP's contract with PeaceHealth—into a legally cognizable injury, that injury cannot be redressed by a favorable decision of this Court. Plaintiffs cite no authority that would allow this Court to grant the relief they seek—namely, an order forcing PeaceHealth to enter into a new contract with EEP after EEP came in *last place* in a fair and competitive bidding process. Even if Plaintiffs could, hypothetically, establish that Defendants were not complying with the CPM statute, the remedy for that violation would be an order compelling compliance—not a judicially mandated business agreement between EEP and PeaceHealth. Thus, the expiration of EEP's contract is not "redressable," and cannot confer standing to sue.

Moreover, Plaintiffs' claims are not ripe. Plaintiffs do not allege any existing violation of the CPM statute or any present interference with clinical decision-making. Instead, they seek declaratory and injunctive relief based entirely on conjecture about how a hypothetical future staffing arrangement might be structured or administered after EEP's contract expires. Courts do not issue advisory opinions or enjoin lawful conduct based on speculative, contingent events that may never occur, and Plaintiffs' attempt to do so here fails as a matter of law.

***Second***, Plaintiffs fail to state a plausible claim for relief. Plaintiffs' claims rely entirely on the CPM statute, but that statute neither creates nor implies a private right of action for these plaintiffs. And even if the CPM statute did authorize a private right of action for companies like EEP to block hospitals from contracting with their competitors, or for tangentially interested third-parties like the Stapletons and Dr. McGee to sue based on hypothetical future harms—which it does not—Plaintiffs' claims would still fail.

Plaintiffs' allegations are wholly conclusory and lack the factual specificity required to state a plausible claim. Plaintiffs do not allege specific conduct by PeaceHealth—or any other defendant—that violates ORS 676.555, nor do they plead facts showing that any such violation is imminent. Instead, the Complaint offers generalized descriptions of Lane's purported "business model" and speculative predictions about how Lane might act in the future. These bare conclusions and conjectural assertions are insufficient to state a plausible claim for relief and cannot survive a motion to dismiss.

## V.    ARGUMENT

### A.    Plaintiffs' claims are subject to dismissal under Fed. R. Civ. P. 12(b)(1) for lack of standing and ripeness.

Article III of the United States Constitution limits federal jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. To establish a case or controversy, a plaintiff must demonstrate that it has standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("standing is an essential and unchanging part of the case-or-controversy requirement"). To establish standing, the plaintiff must show that (1) the plaintiff "suffered an 'injury in fact'— i.e., an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent as opposed to conjectural or hypothetical"; (2) "a causal connection between the injury and the offending conduct"; and (3) that it is "'likely' that the injury will be redressed by a

favorable decision from the court." *Nat'l Labor Relations Bd. v. Oregon*, No. 6:20-cv-00203-MK, 2020 WL 5994997, at *2 (D. Or. Oct. 9, 2020) (*quoting Lujan*, 504 U.S. at 560-61 (citations omitted)). These constitutional requirements are "rigorous," *Valley Forge Christian College v. Ams. for Separation of Church and State, Inc.*, 454 U.S.464, 475 (1982), and the plaintiff bears the burden of establishing each element. *Lujan*, 504 U.S. at 561.

Standing is a "threshold question in every federal case," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), and if the plaintiff lacks standing, the case must be dismissed. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)"); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, it lacks the statutory or constitutional power to adjudicate a case, and the court must dismiss the complaint). To survive a motion to dismiss brought under Rule 12(b)(1), a plaintiff must "clearly allege facts demonstrating each element" required to establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up, citation omitted).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If the allegations in the complaint are "insufficient on their face to invoke federal jurisdiction," the claims can be dismissed as facially invalid. *Id.* But even where the complaint alleges sufficient facts to establish jurisdiction, the court "need not presume the truthfulness of the plaintiff's allegations," and it "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242. The court is even "free to hear evidence regarding jurisdiction . . . , resolving factual disputes where necessary." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (1983).

"Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003).

      1.      EEP has failed to allege facts showing a "concrete injury" sufficient to support standing.

EEP lacks standing to bring this action because it has not alleged—and cannot allege—any legally cognizable injury flowing from any act of any Defendant.

The first requirement of standing is that plaintiff must have "suffered an 'injury in fact'—i.e., an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent as opposed to conjectural or hypothetical[.]" *Lujan*, 504 U.S. at 560-61. It is not clear what "legally protected interest" EEP claims is being invaded by PeaceHealth's decision to contract with a different service-provider to staff the emergency departments at its Lane County hospitals.

The true "injury" animating EEP's Complaint appears to be the loss of its contracts with PeaceHealth, which by their own terms will begin expiring in May. (Compl., ¶ 36 (seeking an order forcing PeaceHealth to extend EEP's contract indefinitely)). EEP cites no legal authority—because none exists—to suggest that it has a legally protected interest in securing a new contract.

Although there is, in limited circumstances, a right to challenge government contracting decisions, no comparable right exists to challenge the outcome of an RFP process for a private contract. As one court has observed, the private party soliciting bids is "the private offeree . . . can accept or reject bids at will." *R.J. Taggart, Inc. v. Douglas County*, 31 Or. App. 1137, 1144 (1977) (Johnson, J., dissenting). Even where a company submits the best bid, it has no

Page 13 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

entitlement to the contract. "As a general rule, a disappointed bidder has no legal right to the award of a contract, even if he happens to be the lowest bidder." *Am. Elec. Co. v. United States,* *270 F. Supp. 689, 690 (D. Haw. 1967)*. And here, EEP plainly did not submit the best bid.

As EEP's contract with PeaceHealth neared its expiration date, PeaceHealth solicited proposals for a new contract through an RFP process. EEP was given a full and fair opportunity to participate in that process, and as the incumbent contractor, it had a significant informational advantage over all other bidders. But after a thorough review of all the bids submitted, EEP's bid received the lowest combined score of all bids submitted, and its bid was ranked last by six of the seven members of the evaluation committee. Simply put, EEP does not have any "right" to be awarded a hospital contract after submitting a losing bid in a fair RFP process. While EEP and its constituent physicians are disappointed not to have their contract renewed, their disappointment is insufficient to confer standing.

Apparently in recognition that it has a standing problem, EEP's complaint attempts to prop up its standing argument by suggesting that it—a for profit corporation—has the exact same legally protected interests as emergency room physicians. EEP alleges, for example, that it has "a legally protectible interest in the ability of its physicians to exercise medical judgment while practicing medicine without the inappropriate and unlawful interference of for-profit corporations." (Compl., ¶ 1). But no such interest belongs to EEP. The CPM statute safeguards the independent medical judgment of licensed physicians. By contrast, EEP's only interest in this case is as a disappointed bidder who finished in last place in a competitive selection process.

Even if EEP could claim its own right to sue under the CPM statute, however, EEP's theory of injury rests entirely on speculation about how PeaceHealth's *next* emergency medical services provider might operate under a hypothetical future contract *after* EEP's contract expires.

Page 14 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

(Compl., ¶¶ 26-30). Such conjectural allegations—unsupported by any concrete facts or allegations of imminent conduct—are insufficient to establish an actual or imminent invasion of a legally protected interest. At best, Plaintiffs' Complaint alleges a "hypothetical future harm that is not certainly impending," which is insufficient to support standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

EEP next alleges that it "has a legally protectible interest in ensuring that competition for medical contracts is fair and in compliance with Oregon law." (Compl., ¶ 1). Again, it is unclear that any such legally protectible interest belongs to EEP. EEP cites no legal basis for its purported interest policing the competitive process for medical contracts, and the actual legal claims that EEP asserts in this case do not seek to vindicate that interest. The Complaint does not, for example, assert antitrust violations, theft of trade secrets, or claims for tortious interference—that is, the kinds of claims that assert a right to fair market competition. Indeed, the Complaint pleads no facts suggesting that PeaceHealth's competitive RFP process was unfair, unlawful, or otherwise noncompliant with Oregon law.

Instead, Plaintiffs rely on the conclusory assertion that Lane is an "illegal entity" because it is purportedly not owned or governed by Oregon-licensed physicians. (Compl., ¶ 13). This allegation is facially untrue: The Complaint itself alleges that Lane is owned and managed by Dr. Johne Philip Chapman. (Compl., ¶¶ 14, 24). Although Plaintiffs incorrectly assert that Dr. Chapman is not licensed to practice medicine in Oregon, this Court may take judicial notice of the fact that Dr. Chapman does, in fact, hold an active Oregon medical license (No. MD229326). *See* Fed. R. Evid. 201(b)(2) (courts can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); see also *In re Nike, Inc. Sec. Litig.*, 181 F. Supp. 2d at 1165 ("The court may judicially notice facts from

Page 15 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

publicly available documents."). Dr. Chapman's licensure status is readily verifiable through the Oregon Medical Board's publicly available license-verification website, https://omb.oregon.gov/search.[3]

Furthermore, even setting aside the fact that Plaintiff's claims about Dr. Chapman's medical license are demonstrably false, it is not clear why **EEP's** rights would be impacted if Dr. Chapman hypothetically lacked an Oregon medical license. Dr. Chapman does not practice at EEP; he is not employed at EEP; and he does not exercise any decision-making authority over EEP. The Complaint contains no explanation whatsoever as to how Dr. Chapman's licensure impacts EEP in any way. In short, EEP has failed to allege any injury in fact that is sufficient to support standing. Its speculative allegations about how Lane *might* operate under some hypothetical future contract with PeaceHealth do not establish a concrete, actual, or imminent injury to EEP, or any invasion of a legally protected interest traceable to Defendants' conduct.

EEP is surely disappointed that its bid ranked last in the competitive RFP process for the emergency medical services contract with PeaceHealth. But EEP's disappointment does not create a cause of action. EEP has no "legally protected interest" in future contracts with PeaceHealth; no legal right to leapfrog other emergency medical service providers who submitted superior bids; and no right to police the bidding process in an effort to stack the deck in its favor. EEP's speculation about whether the winning bidder will comply with legal requirements once its contract term begins does not establish the "irreducible constitutional

---

[3] Pursuant to Fed. R. Evid. 201(b)(2), "While district courts generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, they may take judicial notice of documents referenced in the complaint, pleadings from other relevant proceedings, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment." *Elizabeth Retail Props. LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 984 (D. Or. 2015).

Page 16 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

minimum" of "injury in fact." *See Lujan*, 504 U.S. at 560. Because EEP lacks Article III standing, this Court lacks subject-matter jurisdiction over its claims, and its claims must be dismissed under Rule 12(b)(1).

        2.     <u>Dr. McGee lacks standing.</u>

Plaintiffs have also failed to establish Dr. McGee's standing. Dr. McGee is mentioned just twice in the entire Complaint—once in Paragraph 2, to identify him as a party; and again in Paragraph 3, which states that EEP has a legally protected interest "[l]ike [that of] Dr. McGee." Although the Complaint alleges that Dr. McGee is "a licensed medical practitioner" who has "a legally protectible interest in exercising medical judgment while practicing medicine without the inappropriate and unlawful interference of for-profit corporations," (Compl., ¶ 2), the Complaint contains no factual allegations suggesting that this interest has been violated.

The Complaint does not allege that any Defendant has ever, or will ever, attempt to interfere with Dr. McGee's medical judgment. There is no allegation that Dr. McGee practices emergency medicine; that he works in a PeaceHealth facility; or that he is impacted in any way by PeaceHealth's hospital contracting decisions. In fact, the Complaint does not even allege that Dr. McGee is currently practicing medicine, or that he has ever practiced medicine in Lane County. It merely alleges, in effect, that because he has a medical license, he can sue to enjoin any hospital contracting decision in Lane County—regardless of whether it affects him personally. That is not how Article III standing works. "For there to be case or controversy" sufficient to support standing, "the plaintiff must have a personal stake in the case." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal citations and quotations omitted). Plaintiffs have failed to allege that Dr. McGee has any personal stake in this case, and absent such allegations, Dr. McGee lacks Article III standing and his claims must be dismissed.

3.    Ms. Stapleton and J.S. lack standing.

The Stapletons' claims are similarly deficient. The sole basis alleged for their standing is that J.S. previously received emergency care at a PeaceHealth facility and is "likely to need emergency care in the future." (Compl., ¶ 1). That allegation does not describe a concrete or particularized injury, nor does it identify any harm that is actual or imminent. Although the Complaint alleges that Ms. Stapleton has "a legally protectible interest in accessing patient-centered medical care without the inappropriate and unlawful interference of for-profit corporations," (Compl., ¶ 1), there is no suggestion that this interest has been violated. The Complaint does not allege that J.S. received substandard care, that her medical treatment was influenced or constrained by any Defendant, or that any harm has resulted or will result from PeaceHealth's decision to allow EEP's contract to expire.

Instead, the Stapletons rely on speculation that J.S. may require emergency care at some unspecified point in the future and that such care might then be affected by some hypothetical contractual arrangement between PeaceHealth and its emergency medical services provider. Compare the speculative nature of this allegation to the one that the Supreme Court famously found wanting in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). There, the Supreme Court held that a plaintiff who had previously been subjected to a chokehold by Los Angeles police could not challenge the dangerous police practice because he could not "establish a real and immediate threat" that he would be subjected to the same tactic again. *Id.* at 105. Likewise, here, for J.S. to establish standing, she would have "to make the incredible assertion," *id.* at 106, that she is likely to be a patient in one of PeaceHealth's Lane County emergency departments in the

Page 18 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

near future and, moreover, that her care would be adversely affected by the organizational relationship of Lane to ApolloMD.[4]

Article III does not permit standing based on such conjectural chains of possibilities. Because the Stapletons allege no actual injury and no non-speculative threat of imminent harm traceable to Defendants' conduct, their claims must be dismissed for lack of subject-matter jurisdiction.

4.      Plaintiffs' alleged injury is not redressable by the relief they seek.

The third prong of the Article III standing analysis is redressability. "To establish redressability, a plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (internal quotation omitted). Plaintiffs fail to carry that burden here because the asserted injury—the expiration of EEP's contract by its own terms—is not one this Court has the power to remedy.

"Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) (internal quotation omitted). Accordingly, "even where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief." *M.S. Brown*, 902 F.3d at 1083. That is precisely the situation here.

If Plaintiffs could establish a violation of the CPM statute, the remedy for such violation would be a declaratory judgment and then, at most, an order directing Defendants to comply with

---

[4] Even if J.S. could demonstrate that she expects to be an emergency department patient in the near future (which she cannot), it is not clear how she could ever show that the treatment she would receive from Lane-affiliated doctors would be any different from EEP-affiliated doctors.

Page 19 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS

the statute. It would not—and could not—include an order compelling PeaceHealth to enter into a new contract with EEP. Plaintiffs identify no statute, case law, or equitable doctrine that would authorize this Court to force PeaceHealth to renew a contract that has been lawfully allowed to expire. Because the Court is without authority to award Plaintiffs the relief they seek, their alleged injury is not redressable, and their claims must be dismissed.

    5.    Plaintiffs lack prudential standing.

Even if Plaintiffs could establish Article III standing—which they cannot—their claims would still fail because Plaintiffs do not satisfy the prudential requirements of standing. Although prudential standing rules are judicially self-imposed, they serve an essential function by protecting the proper role of the courts and ensuring that litigation is brought by the appropriate parties. These principles generally preclude litigants from asserting the rights or interests of third parties unless they can show that they are in the best position to represent those parties' interests, ensuring that claims are presented in a concrete factual context amenable to judicial resolution. *See Warth*, 422 U.S. at 499 ("this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

Those concerns are squarely implicated here. Plaintiffs purport to represent the interests of physicians and patients in the exercise of independent medical judgment, yet none of the Plaintiffs alleges that they—or anyone they represent—has actually experienced interference with clinical decision-making.

Instead, EEP seeks to invoke patient interests as a vehicle to protect its own economic position. Courts have long rejected such efforts, recognizing that when a litigant claims to speak for others while pursuing its own interests, "the ability of the actual victim to protect his legal

Page 20 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS

rights may be impaired by the activity of his self-appointed protectors." *People Organized for Welfare & Emp't Rights (P.O.W.E.R.) v. Thompson*, 727 F.2d 167, 172–73 (7th Cir. 1984).

Furthermore, as described below, the Oregon legislature has already determined that there is a class of persons entitled to vindicate the dictates of Oregon's CPM statute: medical licensees or professional medical entities that directly contract with an MSO and suffer an ascertainable loss of money or property. *See* ORS 676.555(5)(b). Here, no defendant possesses any such contractual relationship with any purported MSO.

Because Plaintiffs have not alleged any concrete interference with the rights they invoke, and because they seek to litigate interests belonging—if at all—to absent third parties, prudential standing principles independently require dismissal of their claims.

6.     Plaintiffs' claims are not ripe.

Plaintiffs' claims are also subject to dismissal because they are not ripe. Ripeness is "another doctrine that [courts] use to determine whether a case presents a live case or controversy over which [they] have jurisdiction under Article III." *Safer Chems., Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 411 (9th Cir. 2019) (cleaned up). The ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Id*. A claim is not ripe where it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300–01 (1998) (internal quotation omitted). To satisfy constitutional ripeness requirements, a case "must present issues that are definite and concrete, not hypothetical or abstract." *Safer Chems.*, 943 F.3d at 411.

Plaintiffs' claims fall well short of that standard. They are based entirely on speculation and conjecture about future events that have not occurred and may never occur. Plaintiffs

concede that PeaceHealth has not entered into any emergency medical services agreement with a new provider. EEP is still providing emergency medical services in Lane County, and the Complaint does not allege that any Defendant has engaged in conduct that violates—or even presently implicates—the CPM statute. Instead, Plaintiffs' allegations rest exclusively on predictions about what Lane and/or ApolloMD might do in the future under a hypothetical contractual arrangement that does not yet exist.

In the absence of any present statutory violation or concrete dispute, Plaintiffs effectively ask this Court to resolve abstract questions about future conduct. That is precisely the type of premature adjudication the ripeness doctrine is meant to prevent.

       7.     <u>Remand would be futile.</u>

When a federal court determines that a removed case lacks Article III standing, the proper course is ordinarily to remand the action to state court. Remand is unnecessary, however, where it would be futile because the plaintiff likewise lacks standing under state law. That is the situation here. Plaintiffs would lack standing in Oregon state court for the same reason they lack standing in federal court: they have failed to allege a concrete, non-speculative injury that the court has the power to redress.

As discussed in detail below, there is no private right of action allowing these Plaintiffs to sue under the CPM statute. Thus, their claims hinge on their ability to state a valid cause of action under Oregon's Declaratory Judgment Act, ORS 28.020. To establish standing to seek a declaratory judgment in Oregon state court, a plaintiff must satisfy the test articulated by the Oregon Supreme Court in *Morgan v. Sisters School District No. 6*, 353 Or. 189, 195 (2013). First, the plaintiff must demonstrate "some injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or validity of the law." *Id.* (quoting

Page 22 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS

*League of Or. Cities v. State of Oregon*, 334 Or. 645, 658 (2002) (internal quotation marks

omitted)). Second, the plaintiff must show that the alleged injury is "real or probable, not

hypothetical or speculative." *Id*. Third, the plaintiff must establish that a judicial decision would

"have a practical effect on the rights that the plaintiff is seeking to vindicate." *Id*. at 197. In other

words, there must be a meaningful connection between the relief sought and the rights allegedly

at issue.

Oregon courts have repeatedly emphasized that they "cannot issue declaratory judgments

in a vacuum; they must resolve an actual or justiciable controversy." *TVKO v. Howland*, 335 Or.

527, 534 (2003) (internal quotation marks omitted). A controversy is not justiciable where it

depends on "contingent or hypothetical events" rather than present facts. *Id.* As explained above,

Plaintiffs' claims rest entirely on speculation about future events that may never occur. Because

Plaintiffs allege no present or probable injury and seek relief untethered to any concrete dispute,

they would lack standing in Oregon state court as well, making remand futile.

> **B.    Plaintiffs' claims must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a plausible claim for relief.**

Even if Plaintiffs could establish standing, however, their claims would still be subject to

dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

Under Rule 12(b)(6), courts must dismiss complaints that do not allege sufficient facts to

demonstrate a plausible entitlement to relief. "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). This plausibility showing "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation," and it "asks for more than a sheer possibility that

the defendant has acted unlawfully." *Id.*; *see Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019).

Plaintiffs' factual allegations are deficient because they fail to establish either a right to sue under the CPM statute or a plausible violation of that statute by Defendants.

      1.     <u>Plaintiffs have no private right of action under the Corporate Practice of Medicine statute.</u>

Plaintiffs' sole asserted basis for relief is Oregon's CPM statute, ORS 676.555. That statute does not authorize a private right of action for these Plaintiffs.

The CPM statute, which was passed by the legislature just last year, includes an expressed right of action for a defined class of plaintiffs. It says:

> A ***medical licensee*** or ***professional medical entity*** that suffers ***an ascertainable loss of money or property*** as a result of a violation of a prohibition set forth in subsection (2)(a) of this section ***may bring an action against a management services organization*** with which the medical licensee or professional medical entity has ***a contract for management services***, or a shareholder, director, member, manager, officer or employee of the management services organization … to obtain:
>
>     (A) Actual damages equivalent to the medical licensee's or professional medical entity's loss;
>
>     (B) An injunction against an act or practice that violates the prohibition; and
>
>     (C) Other equitable relief the court deems appropriate.

ORS 676.555(5)(b) (emphasis added).

The statute is clear that a plaintiff seeking to sue under the CPM statute must satisfy four threshold elements: (1) the plaintiff must be a "medical licensee or professional medical entity"; (2) the plaintiff must have "a contract for management services" with "a management services organization"; (3) the plaintiff must have suffered an "ascertainable loss of money or property";

and (4) the defendant must be "a management services organization." Plaintiffs' claims against PeaceHealth do not satisfy these elements.

None of the Plaintiffs has "a contract for management services" with "a management services organization"; Plaintiffs do not allege any "ascertainable loss of money or property"; and PeaceHealth is a hospital, not a "management services organization" subject to suit under the CPM statute. Staff Measure Summary, S.B. 951-A, at 1 ("management services organization . . . [d]oes not include hospitals"). Plaintiffs' claims against Lane and the Apollo Defendants are similarly deficient, as the statute does not authorize civil actions against MSOs who have no contract with the plaintiff. ORS 676.555(5)(b).

Under Oregon law, statutory liability exists only when the legislature has expressly or impliedly created a private right of action for the breach of a statutory duty. *Deckard v. Bunch*, 258 Or. 754, 759 (2016). Where the Legislature has declined to create a private right of action for a given type of plaintiff, the court will not supply one. *Newberg Crestview, LLC v. City of Newberg*, No. 3:22-CV-1289-AR, 2024 WL 4581543, at *9 (D. Or. Oct. 25, 2024). Although Oregon courts sometimes infer a private right of action in a statute that does not expressly create one, they do so only where a statute is silent on the matter and only where necessary to effectuate legislative intent. *Serles v. Beneficial Or., Inc.*, 91 Or. App. 697, 703 (1988). Those prerequisites are not present here.

The statute is plainly not silent; it creates an expressed right of action—just not one that belongs to these Plaintiffs, and not for the hypothetical future harms alleged in the Complaint. If the legislature had intended for the private right of action in the CPM statute to extend to these plaintiffs and these hypothetical harms, it could have easily said so in the statutory text. The fact

Page 25 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS

that it did not is dispositive evidence that the legislature did not intend to authorize the kind of claim asserted here.

Indeed, the legislature carefully considered the right of action it was creating. The version of the bill as originally introduced would have deemed violations "an unlawful trade practice under ORS 646.607," and, thus, remedies under that existing statute would have been available. S.B. 951 (Introduced). The Senate Committee on Healthcare amended the bill to replace the unlawful trade practice set of remedies with the private right of action that appears in the final enacted bill. The committee's staff member described that the amendment "would allow medical licensees or medical entities to bring a civil action as a remedy; and this is in lieu of the base bill where it would be enforcement as an unlawful as a trade practice." Video Recording, Senate Committee on Health Care, Mar. 25, 2025, at 8:12 (comments of Daniel Dietz). The narrow right of action enacted was clearly the product of legislative discussion and compromise.

Plaintiffs attempt an end-run around the statute's narrow right of action by purporting to bring nonspecific claims for "Declaratory Relief" and "Injunctive Relief." (Compl., ¶¶ 3, 10). But "declaratory relief" and "injunctive relief" are remedies, not claims. *See Henry v. Gerber Prod. Co.*, No. 3:15-cv-02201-HZ, 2016 WL 1589900, at *4 (D. Or. Apr. 18, 2016) ("[A]n injunction is a type of relief, not a separate cause of action."); Fed. R. Civ. P. 8(a)(2) (requiring the complaint to state "a short and plain statement *of the claim*") (emphasis added).

Assuming they intend to assert a claim under the Oregon Declaratory Judgment Act, rather than the CPM statute itself, this does not help them overcome the limits of the CPM statute. Declaratory judgments cannot be used in this way; if they could, all plaintiffs falling outside a statutory right of action could avoid that legislative limitation by claiming to seek a declaratory judgment. "Although a trial court has broad power to provide declaratory relief, it

Page 26 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

lacks subject matter jurisdiction under ORS 28.010 if some other exclusive remedy exists."
*League of Oregon Cities v. State*, 334 at 652 (citing *Alto v. State Fire Marshal*, 319 Or 382, 395
(1994)). "In addition, the trial court should decline to exercise its jurisdiction under ORS 28.010
if some more appropriate remedy exists." *League of Oregon Cities*, 334 Or at 652 (citing *Brooks
v. Dierker*, 275 Or 619, 624 (1976)). As explained above, even if Plaintiffs could establish a
violation of the CPM statute—which they cannot—their request for a declaratory judgment
should be denied because the CPM statute provides a more appropriate remedy: a private right of
action for medical licensees who have been *actually impacted* by such violations.

Moreover, a claim for declaratory relief "may be dismissed if the complaint fails to allege
a justiciable controversy." *Waremart, Inc. v. Mathias*, 168 Or. App. 272, 275 (2000) (citing
*Erwin v. Or. State Bar*, 149 Or. App. 99, 106 (1997)). The Oregon Supreme Court has explained
that "[a] controversy is justiciable, as opposed to abstract, where there is an actual and
substantial controversy between parties having adverse legal interests," and "[t]he controversy
must involve present facts as opposed to a dispute which is based on future events of a
hypothetical issue." *Brown v. Or. State Bar*, 293 Or. 446, 449 (1982) (citations omitted). "The
court cannot exercise jurisdiction over a nonjusticiable controversy because in the absence of
constitutional authority, the court cannot render advisory opinions." *Id.* Rather, "[t]he dispute
must involve present facts, and it must be a dispute in which a prevailing plaintiff can receive
meaningful relief from a losing defendant." *Hale v. State*, 259 Or. App. 379, 384 (2013). As
explained above, Plaintiffs have failed to establish "an actual and substantial controversy" based
on "present facts"; instead, they present a "hypothetical issue" based on "future events" that are
not certain—or even likely—to occur. *Brown*, 293 Or. at 449. They are therefore not entitled to
declaratory relief, and their claim for such relief must be dismissed.

In addition, the relief Plaintiffs actually seek is not a declaratory judgment, but a mandatory injunction forcing PeaceHealth to renew their contract. A declaratory judgment would have no practical effect and would not address the "injury" Plaintiffs claim to have suffered—namely, the expiration of EEP's contract with PeaceHealth. *See Ken Leahy Const., Inc. v. Cascade Gen., Inc.*, 329 Or. 566, 572 (1999) ("[T]he distinguishing characteristic of a declaratory judgment is the absence of coercive relief.").

In sum, Plaintiffs can point to nothing in the statutory text of either the ODJA or the CPM law that authorizes the claim they attempt to bring here: an action for a mandatory injunction forcing a hospital to renew an expired contract with an emergency medical services provider. Plaintiffs' claims must therefore fail as a matter of law.

### 2. Plaintiffs fail to plausibly allege a violation of the Corporate Practice of Medicine statute.

Even if the CPM statute authorized a private right of action for these Plaintiffs—which it does not—Plaintiffs have failed to plausibly allege any statutory violation.

As discussed above, Plaintiffs are not within the class of persons the legislature intended to protect when it enacted ORS 676.555. To prevail on a statutory-liability claim under Oregon law, a plaintiff must show both that it falls within the class the legislature intended to protect and that it suffered the type of harm the legislature intended to prevent. *Bellikka v. Green*, 306 Or. 630, 634–35 (1988). Plaintiffs cannot satisfy either requirement.

The CPM statute is concerned with protecting patients and preserving physicians' independent clinical judgment—not with protecting incumbent contractors from losing hospital contracts through ordinary market competition. Here, however, Plaintiffs seek to vindicate only the economic interests of EEP, a for-profit staffing company dissatisfied with PeaceHealth's decision not to renew its contract. Nothing in the statutory text or legislative history suggests any

intent to confer enforceable rights on entities like EEP, which do not themselves practice medicine and do not allege interference with their own clinical judgment.

Nor is the harm alleged—the nonrenewal of a hospital staffing contract—the type of injury the legislature sought to prevent or remedy. The CPM statute does not exist to guarantee continued revenue, entrench incumbent contractors, or shield private companies like EEP from competition. Because EEP's alleged injury falls outside both the protected class and the scope of harms addressed by the statute, it cannot support statutory liability as a matter of Oregon law.

Plaintiffs' claims also fail because they do not plausibly allege that any provision of the CPM statute has actually been violated. The statute does not prohibit MSOs from performance of management or administrative functions—in fact, Plaintiffs concede that MSOs can provide myriad "back office" services to medical practices without violating the CPM statute. (Compl., ¶ 17). Rather, an MSO violates the CPM statute only if it exercises control or ultimate decision-making authority over clinical decision-making through its control of one or more of those functions. ORS 676.555(2)(a)(G). Plaintiffs ignore this fact, instead implying that mere performance of administrative functions, standing alone, violates the CPM statute. (Compl., ¶¶ 26-30).

ORS 676.555 is specific about what it prohibits. The law contains various prohibitions on forms of corporate ownership of professional medical practices and forms of "de facto control" over decisions oriented toward patient care. Plaintiffs do not allege and cannot show that the business relationship between ApolloMD and Lane violate any of the ownership proscriptions in the statute. *See* ORS 676.555(2)(a)(A)-(F). With respect to the law's prohibitions on "de facto control" of medical decision-making, Plaintiffs do not allege and cannot show that ApolloMD

Page 29 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

has run afoul of any of these provisions either. Plaintiffs do not say, for example, that ApolloMD

is:

- Exercising ultimate decision-making authority over hiring or terminating, setting work schedules or compensation for, or otherwise specifying terms of employment of medical licensees, ORS 676.555(2)(a)(G)(i);

- Exercising ultimate decision-making authority over setting clinical staffing levels or specifying the period of time a medical licensee may see a patient, *id.* at § (2)(a)(G)(ii);

- Exercising ultimate decision-making authority over making diagnostic coding decisions, *id.* at § (2)(a)(G)(iii);

- Exercising ultimate decision-making authority over setting clinical standards or policies, Exercise ultimate decision-making authority over, *id.* at § (2)(a)(G)(iv);

- Exercising ultimate decision-making authority over setting policies for patient, client or customer billing and collection, *id.* at § (2)(a)(G)(v);

- Exercising ultimate decision-making authority over advertising a professional medical entity's services under the name of an entity that is not a professional medical entity, *id.* at § (2)(a)(G)(vi);

- Exercising ultimate decision-making authority over setting the prices, rates or amounts the professional medical entity charges for a medical licensee's services, *id.* at § (2)(a)(G)(vii);

- Exercising ultimate decision-making authority over negotiating, executing, performing, enforcing or terminating contracts with third-party payors or persons that are not employees of the professional medical entity, *id.* at § (2)(a)(G)(viii).

Even if mere performance of simple administrative services, without clinical control, could constitute the "corporate practice of medicine" under the statute (which it cannot), Plaintiff has failed to allege that ApolloMD is actually performing any of these administrative services for Lane. The Complaint identifies several purported statutory violations, none of which is supported by well-pleaded facts:

Page 30 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

| Purported CPM Violation | Why the Allegation Fails |
|---|---|
| Advertising a professional medical entity's services under the name of a non-professional entity — ORS 676.555(2)(a)(G)(vi) (Compl. ¶ 26) | The Complaint does not allege that Defendants advertised medical services to patients under an improper name. Plaintiffs allege only that ApolloMD engaged in physician recruitment or retained a headhunter, which is not "advertising a professional medical entity's services" within the meaning of the statute. |
| Controlling the hiring, work schedules, or compensation of medical licensees — ORS 676.555(2)(a)(G)(i) (Compl. ¶ 27) | The Complaint alleges no facts showing actual control over hiring, scheduling, or compensation. At most, Plaintiffs speculate that such control might occur at some undefined point in the future. |
| Negotiating or controlling contracts with third-party payors — ORS 676.555(2)(a)(G)(viii) (Compl. ¶ 28) | Plaintiffs do not allege that any such negotiations have occurred, nor that decision-making authority rests with an MSO rather than a physician-owned entity. |
| Controlling billing or collection policies — ORS 676.555(2)(a)(G)(v) (Compl. ¶ 29) | The Complaint pleads no facts showing prohibited control, as opposed to lawful administrative support. Indeed, Plaintiffs expressly acknowledge that MSOs may provide back-office and administrative services under Oregon law. (Compl. ¶ 19). |

The remainder of the Complaint relies on vague and conclusory characterizations of ApolloMD's purported "business model," coupled with speculation that the model may be implemented unlawfully. Courts are not required to credit allegations that amount to mere "conclusory statements," unwarranted deductions, or unsupported speculation. *See, e.g.*, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir. 2014); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Page 31 – DEFENDANT PEACEHEALTH'S MOTION TO DISMISS
152633711.4 0065738-00104

As discussed above, when enacting S.B. 951, the legislature did not set out to ban management service organizations, prohibit their involvement in patient care, or even disallow the "Friendly Physician" model of partnership between management service organizations and physicians groups. The legislature did something far more specific: it barred management service organizations' ownership of physicians groups and de facto control of patient care. The legislative history is replete with statements by the bill's proponents that the bill would not prohibit the kind of relationship formed by ApolloMD and Lane to operate the emergency departments of PeaceHealth's Lane County hospitals.

## VI.    CONCLUSION

For the foregoing reasons Defendant PeaceHealth respectfully requests dismissal of all claims asserted against it in this action.

DATED: April 20, 2026                              STOEL RIVES LLP

_____
MISHA ISAAK, Bar No. 086430
misha.isaak@stoel.com
KEVIN R. SCHOCK, Bar No. 181889
kevin.schock@stoel.com
RYAN H. TAMM, Bar No. 222774
ryan.tamm@stoel.com